Was I close? All right. Is the appellant ready to proceed? Appellee? All right, you may proceed. May it please the court. Shannon Locke on behalf of Reymundo Villarreal-Arelis. Your Honors, we presented three issues for appeal, appellate review. With the conflict of interest in this case. Your Honors, we are here today because the government was right. The government was right when it spotted a conflict of interest and notified the parties that a conflict of interest existed from the very moment that the trial attorney filed his notice of appearance. When Mr. Womack filed his notice of appearance, the government let him know telephonically that he had a potential conflict of interest. The reason he had a conflict of interest was that he had previously represented a witness, a who had testified or who had gone to trial with Mr. Womack as his trial attorney. Two Garcia hearings were held in August of 2016. Mr. Villarreal-Arelis was notified of the conflict. He was told about the conflict, but the conflict continued to develop. The conflict continued to develop as Mr. Womack continued to represent Mr. Villarreal-Arelis. He continued to make decisions that were pertinent to the case. This is a voluminous case involving significant amounts of discovery, but what Mr. Womack did was he continued to represent even though he had previously indicated that he would hire a second attorney to handle the conflict. That second attorney didn't make a notice of April 17th of 2017, and that's the first adverse effect that Mr. Villarreal-Arelis suffered. Between the dates of August 4th, 2016, when Mr. Womack first proposed hiring a second attorney, to April 17th, 2017, when a second attorney was finally hired to handle this conflict, significant events had developed, and Mr. Womack was already taking decisions, making decisions that were detrimental to his client, and as a result of this conflict of interest. Tell us, even assuming there was an actual conflict, how that conflict adversely affected counsel's performance. So, and I want to point to the government's response to this. They first said that this was an actual conflict of interest in January of 2017. They said that it was a conflict of interest because, and the government, Your Honor, is the one that's in the best position to spot these things. They have all the evidence. They understand exactly what is going to be taking place at trial, but in January of 2017, they say that this is an actual conflict of interest because Mr. Womack, the trial attorney, isn't sharing with his client crucial information, crucial information that is extremely detrimental to him. His client is rejecting the plea bargain, as he does in January of 2017. He rejects the plea bargain, and according to the government, as he's going through these discovery hearings, he is telling the government, he is telling the court, I'm not reviewing any information that has to do with this witness. What is that information? The government puts forward the information best in its response to Mr. Womack's motion in relation to Mr. Villarreal-Aureli's, and specifically, Your Honor, if you want a good recitation of this, it's in the government's motion in Limney and in Record on Appeal 11-392 and 11-393, where they say, look, in the response to the motion in Limney, they say this information is extremely detrimental. This witness is going to be the witness that connects the dots. He and to give the court a little bit of background, what this case was involving was, it was involving a drug cartel that was using racehorses to launder money, and so the witness was going to connect the dots between Mr. Villarreal-Aureli's and the drug laundering or the drug conspiracy. But ultimately, he never testified, did he? He never testified because the government, because the conflicted attorney stipulated to all of the prior to trial. So that's another adverse effect that is very concerning and significant in and of itself. So not only is he not sharing the extremely detrimental evidence and information with his client, he then files a motion in Limney. The court tells him this is not an evidentiary ruling. When this evidence comes up, you'll have to address it at that point, at which point the government says, well, I believe that we have a stipulation. And Mr. Womack, without consulting with the independent attorney that did not have the conflict or did not have as much of a conflict, he stipulates to all of the government's evidence, and that should be an additional concern. So not only do we have the adverse effect of not sharing Do you have any case where a conflict was recognized when it was this early in the proceedings and not at trial? So the question, I think, should be when does the, when does the attorney begin taking detrimental decisions to his client, making detrimental decisions as a result of the conflict? And that's been Do you have a case where this happened that early and not, no longer continued? Well, so I think, I think that the case law is fairly clear that as soon as the attorney begins to make detrimental decisions to his client as a result of the case law, sorry, as a result of a conflict of interest, then he, then he has an actual conflict. That's when the actual conflict occurs. And it can occur at the very beginning, and it can occur at the very end. But, but here we had it shot through. United States v. Martinez, United States v. Martinez, and I do have the cite here, Judge. United States v. Martinez, and that is citation 630F2D361, says that, that if an attorney represents a government witness, that that government, that that is an actual conflict of, that that is an actual conflict of interest. And so usually what happens, and typically the case law unfolds like this, government says disqualify this attorney, the judge then disqualifies him, and that is appealed. Okay? And so, and that would be, in my opinion, why it should be reversed and vacated. So the client wasn't informed of the conflict? The conflict, the client was informed of a conflict. He wasn't informed of the entirety of the conflict. So he was told that, that his, his trial attorney had represented a witness who had previously gone to trial and would be testifying against him. And he said, that's fine, I want to keep Mr. Wolman. He did, he did say that. Multiple times. He did say that multiple times. But what he was not told that this witness, that the attorney wouldn't be reviewing the information connected to this witness. He wasn't told that this witness shared, that this witness's trial shared other witnesses with him. That Mr. Womack wouldn't be using the information that he gained in the first trial to help him. So that this was a very significant conflict of interest. Why isn't it, I'm still puzzled, why isn't it something that your client can pursue on pay view? And so, I think the record is significantly developed here. We have evidentiary hearings, we have, we have many motions to disqualify. Motion in limine. I think that the record is significantly developed. If it's the court's opinion that it's not significantly developed, who does it, you cannot reach the merits of this, of this argument. So that we can pursue it under 2252. But, but we have the opportunity to fix this now. I think that the court has the ability to, to look at this in the entirety and say, look, when somebody is telling you that they don't, that they're not sharing the information, all of the information, that they, that the, that the defendant would be entitled to, that it should be reversed and vacated. Additionally, your honors, another remedy that you could pursue is, is you could order an additional Garcia hearing. That was done in the United States versus Salado. But I, I do believe that there is significant proof that, that, that the trial was, was, was not an appropriate trial to have with the conflicted attorney that was, that was present. And so essentially what you're saying is Mr. Womack never shared this very important information with the client. And then the independent attorney who was hired to deal with the testimony from this adverse witness didn't share it either. I don't know that. That's something we don't know. So the last time that the government makes this allegation is in April of 2017. April 18th of 2017, they I mean, I mean the client had all the information and continued to insist that Mr. Womack represent. Well, we don't know that either, your honor, because that was, that, that, that final Garcia hearing was never held. And so that, that was never, that was never held. So certainly when he's making the decision to go to trial and, or plead guilty, he did not have that information. I believe that is, that is beyond dispute. The government is saying it on April 18th of 2017, less than 60 days before trial. An independent attorney is not hired until April 17th of 2017. Again, less than 60 days before trial. And that the trial decision was made in January of 2017. So he wasn't, he wasn't making that decision with a conflict-free warrant. Is it true that all the actions that you point to as demonstrating ineffective assistance of counsel, all those actions occurred after the hearings that you assert sufficiently developed the record for us to review? Yes, that's true. That is true. Absolutely. And, and specifically the the matters that are of concern. We have a United States attorney who's saying this is an ethical violation. We have a magistrate judge saying that this is an ethical violation. On the eve of trial, we have Mr. Womack, and he is, the conflict of interest is this. He has an interest to his former client. He has a duty to his former client. He has to maintain his confidence. He has to maintain his work product. He has to maintain his attorney-client privilege. He has that duty. He has a duty to his own client, Mr. Villareal Arellis. And he also has a concern about his own bar card, because he is in violation according to the, both the magistrate judge and the United States Attorney's Office. He's in violation of the ethical rules, of the Texas ethical rules, 1.09, 1.06, 1.05. And then, and it is that at that point where he should not be the one deciding. He shouldn't be the one deciding to stipulate to all of this. That should be done with a conflict-free lawyer. Additionally, as sort of a, I don't know what you'd call it, cheese on top of the hamburger, you have, the conflict-free lawyer also has a conflict. He had very briefly represented one of the witnesses who actually testified in the case. The order that the magistrate judge had handed down regarding the conflict of interest specifically said that the conflict-free lawyer had to be prepared to take over the entire case, which he, in our opinion, could not have done, because he also had a conflict. And that conflict was never addressed. So the developments that we have are specifically these. We have, number one, Mr. Womack does not share all of the government's evidence with his client while he's making the crucial trial or plea decision. That's number one. Number two, he waits eight months to hire a conflict-free lawyer. Number three, the conflict-free lawyer has his own conflict, never addressed. Number four, the witness doesn't waive the conflict. He says that he is not consenting to Mr. Womack's, he's not consenting to Mr. Womack's representation of Mr. Villarela's. And then number five, under that, under that rubric, Mr. Womack then stipulates all of the government's evidence. And that is the witness. All of this is potential. The magistrate considered it very carefully in a memorandum to the district court recommending against disqualification. And all of the conflicts, the potential conflicts that Mr. Womack faced, based on his prior representation of Garcia Solis and his representation of the appellant, Mr. Villareal, all of it was going to come about if Garcia testified. And I think we need to focus on what is the nature of the conflict that are at stake. And what I believe are conflicting duties concerning confidentiality, if he received confidential information from Mr. Garcia in the prior representation, which he would have a conflict in maintaining that confidentiality while vigorously cross-examining Mr. Garcia in defense of his client if there was such information. And we don't know if there was such information. I'd submit to the that Mr. Garcia did testify in another trial. And his testimony basically was that he handled the horses for the Zetas. That's pretty much what Carlos Nayen did. And he testified in this case. And for that reason, in part, the prosecutors decided not to call Mr. Garcia. When we got to trial, we had kind of a mess here because there was potential conflict. Part is the confidentiality. The other is the duty of loyalty that he owed, that Womack owed to both clients, to Mr. Villarreal and Mr. Garcia. I think that duty of loyalty as to Mr. Garcia would not have arisen, however, until Mr. Garcia actually testifies. At which point, Mr. Womack is going to have to vigorously cross-examine, try to undermine, perhaps demonstrate that Mr. Garcia is lying, possibly. I don't really think that's what was there, but that's what the potential conflict was. And Garcia never testified, so Mr. Womack was never put to that choice. At what stage did Womack stop representing Garcia? He stopped representing Garcia after Mr. Garcia was convicted at trial in Austin in 2012 and 13. And Judge Sparks relieved Mr. Womack from representing Garcia. So it's about three years. About two and a half years before Mr. Villarreal is arrested and about three and a half years before the trial occurs. In the meantime, Mr. Garcia has testified in another trial. It's the retrial of Colorado SESA, which was the original Austin trial. Well, I guess my concern is if Garcia Solis, if the conflict doesn't ripen unless he testifies and he was never called as a witness, then all the government had to do instead of insisting that—because the government kept insisting that there was a conflict, but all the government had to do was say, we're not going to call Garcia Solis. And in the end, that's what they did, Judge. They did it at trial when they realized— Well, that's—I mean, you're making my point. They did it at trial. Well, but at that point, the court could have intervened. I mean, the case of Newell recognizes that at that point, the court could intervene and then address with Mr. Villarreal, look, there's a conflict here. Here's the full parameter of it. We now know what it is. What he says is the reason the government did it at trial is because once Mr. Womack stipulated to all of these exhibits, which was cumulative of the testimony that Garcia Solis would have been given, then it was unnecessary for the government to wait. No, I'd submit to you, Judge, that the exhibits, frankly, and the record's not well enough developed, but if you look at all those exhibits, most of those exhibits are about the purchase of horses. Mr. Garcia had nothing to do with the purchase of those horses by Los Piojos, the Villarreal family. Mr. Garcia's role was he handled horses that were purchased by Miguel Trevino and Omar Trevino. They were not main players in this case. They were sources of the horses that were involved in this case were horses that the Villarreal's were buying. It was sort of a parallel activity similar to the activity that the Trevino's engaged in, and essentially Garcia's testimony was going to be, I bought horses, I handled the horses for Trevino and for Cesar, which was a different case, and I saw Raymundo Villarreal at the horse races. I saw him handling horses. I believe he handled the horses for the... So he wasn't called to trial because of what another witness... Correct. Carlos Nayen covered all of that. So the government didn't know this witness was going to say that at the trial until he said it? Well, I don't want to speak for the prosecutors, Judge. I know trying cases that when you get into trial and you actually hear how the testimony goes, you make an assessment and you make a judgment. I think we've got enough. We'll get to the jury. I think we can persuade them. And there were some other very strong witnesses against the appellant concerning what he did in relation to the drugs. Villarreal, I mean, Garcia knew nothing about the drugs. Garcia didn't, so far as I know, and I don't believe the records show, that Mr. Garcia was involved in horse transactions with the Villarreal's. They were parallel. They were with drug proceeds, but they weren't cross each other. It's kind of like they were both buying at the Walmart and they were connected, but they weren't engaged in the same transactions together. And because he never testified, then these conflicts as to loyalty and as to confidentiality, they never became actual. They didn't adversely affect Mr. Womack's representation of Mr. Villarreal. How do we know that it didn't affect it during the courts leading up to the trial? Well, the magistrate judge oversaw the discovery, and the magistrate judge's memorandum and recommendation finds that all of the discovery was provided. There is reference in a number of the pleadings to meetings between Mr. Villarreal, Mr. Womack, and the prosecutors, as well as some of Mr. Villarreal's family and co-defendants who had pled guilty that Mr. Womack refers to as the show-and-tell. And essentially, they sat down and the prosecutors said, and this was in early 2017, this was about January of 2017 before the trial, to lay it all out and say, what do you want to do? Do you want to plead or not? And Mr. Villarreal came back and said, no, I don't want to plead. I want to go to trial. So he heard what the government's case was going to be. He had that explained to him in a face-to-face meeting and made the decision not to. That's when the government, when the prosecutors were concerned that, oh my god, now we're going to have a trial. It's not going to go away. It looks like we're going to call this witness. And so we've got this circumstance where the court has, and we again asked the court to reconsider the disqualification, and the district court and the magistrate judge said no. So in essence, what we did was we cured what we thought was a problem or was going to be a problem once we got into trial. I mean, to grant relief basically says, well, once Mr. Womack is in the case, nothing, and the court says he can stay in the case. What's the remedy? Trial and reversal? That just doesn't seem like that's the most effective way to resolve this. And I say that that's a sort of a prudential consideration, but the circumstance is there wasn't an actual conflict. The conflict never came to pass because Mr. Garcia was never on the stand and Mr. Womack was never put to the difficult decision of vigorously representing Mr. Villarreal, perhaps violating confidences, or protecting his original client. Now, the appellant talked some in his brief about, well, he could have had, Garcia could have had cooperation, and Mr. Villarreal, Mr. Womack should have done something about that. Mr. Womack's representation terminated. It terminated several years before, and Mr. Garcia, after he was convicted at trial, struck his own deal with prosecutors in Austin, ended up testifying, and ended up getting his sentence reduced before this trial. And Womack, because he no longer represented, no longer had an obligation to see to it that Mr. Garcia had opportunities to get acceptance of responsibility or credit for cooperation or whatever. He may have had an obligation not to undermine him. He may have had an obligation not to vigorously cross-examine him and show him at trial, and show on trial that he, for example, lied, withheld information, whatever it might be, and we don't know, we're speculating, but that never arose. And what's significant, I think the controlling thing in this, is the circumstance that Mr. Garcia never got to the stand, and because he didn't, because the government basically said, we're not going to put on all our evidence. It's the only way we can, we can protect this. It's the only way we can do something about what will be an actual, what will be an actual conflict when Mr. Garcia takes the stand, as we elected not to. Went to trial without it. If any, if anything adversely affected some party, it was the not putting him on, and elected at the end not to put him on. And I'd submit that some of this, I think, is difficult for the court to resolve because the record's not fully developed. There's a, there's two Austin trials. There's ample testimony by Mr. Garcia in the second Austin trial, and that stuff technically isn't in the record. It's available in the public record through PACER, but it's not in the record. But I think that when you review the testimony that Mr. Garcia most likely would have given, based in part on the proffers that the government made in its motions to the court raising the conflict, Mr. Garcia played a small role in this. He was not, he was not a significant witness, and as far as the exhibits are concerned, I scratched my head reading the record going, what does Mr. Garcia have to do with the exhibits? The exhibits have to do with a large number of horses that were purchased by the Villarreal's that Mr. Garcia was not a party to. He wasn't involved in that. He was involved in the purchase of horses and the training of horses and translations for Carlos Nayen with respect to monies provided by the Trevino's, Omar and Miguel Trevino, and that's not what was going on in this particular case. So, to conclude, unless the court has further questions, it's our position that conflict never became actual. It did not adversely affect, and there's not enough information on this record as developed to determine whether or not there was a conflict that adversely affected, and that the issue that we have in this particular instance is to let Mr. Villarreal, if he so chooses, challenge the effectiveness of his counsel in, as Judge Willett points out, a habeas corpus or 2255-type motion where a full record can be developed. Mr. Womack can testify about whatever the communications were, whether there was anything that affected it or affected his decision-making. We'd ask the court to affirm the conviction. There's one other thing I would like to clarify with respect to, counsel didn't raise it, but with respect to the closing argument issue, I represented in the brief that upon Mr. Womack's objection, I said the court overruled an objection to shifting the burden of proof. I've gone back a little bit. The court didn't rule or overrule. The court simply said the jury's been instructed on that move on counsel. So, I don't think it inadvertently misrepresented what the court's ruling was. Thank you, counsel. Thank you, sir. Rebuttal. I'd like to point... Mr. Locke, before you get started, counsel opposite said that the conflict never developed because he wasn't put on the stand. Is it your position that it developed very early but then terminated when he didn't testify? So, we see a conflict from the beginning to the end. We believe that it becomes an actual conflict of interest when the government believed it became an actual conflict of interest, which was in January of 2017. They file a motion to continue, and January 26, they file a motion to reopen the conflict hearing. I apologize. Record on appeal 545. They then call it an actual conflict of interest. We agree with that statement there. It became an actual conflict of interest because Mr. Womack was not sharing all of his information with his client, which the government continued to say into April of 2017. So, that's the actual... And from then, it continues to deepen and worsen when all of the evidence is stipulated to by the conflicted attorney, the one that has the actual conflict of interest. We also disagree with the characterization that Mr. Garcia would not have had specific facts to tell. When the government received Mr. Womack's motion in Lindy, which didn't just sit by and say, well, this is a cumulative witness. What they said was they filed a 10-page response. And in their conclusion, they said, exclusion of the witness's testimony, even temporarily by motion in Lindy is inappropriate because the witness is an extremely relevant fact witness with direct knowledge of its conspiracies. They didn't say that he was a supplemental or tangential. He was an extremely relevant fact witness. That's in 1133, 1141. The government gives a case background which talks about the witness's involvement with Mr. Villareal's rallies. These are things that were never shared with, or at least in April of 2018, we're not being, or 2017, we're not being shared with Mr. Villareal. Did your client, during the course leading up to the trial, did he have any legal representation regarding his waiver? Not, so there was never any additional hearings after August of 2016. No actual evidentiary hearings. There's nothing in the record. He continued to waive the conflict. Well, I don't know that we know that. I don't know that he was never addressed on the record to determine after August of 2016 whether or not he was continuing to waive. It's not clear that he understood that Mr. Garcia Solis was not consenting to the representation. So just to be very clear, while the representation terminated, Mr. Womack's duty to his former client did not. That continues, and that was the source of the conflict, was that he had a duty to his former client, and because he had a duty to his former client, he couldn't fully represent Mr. Villareal at rallies, and he couldn't formally or fully represent him until he hired a second attorney who was also conflicted, and so that is the full nature of the conflict here. But the specific information that Mr. Garcia Solis had can be found in the government's motion in limine, response to the defendant's motion in limine 11-339 through 345, and that details all of the facts that Mr. Garcia Solis had in relation to Mr. Villareal at rallies. Are there any further questions, Your Honors? Thank you, Counsel. Thank you very much.